UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARVIN SANTIAGO CEREZO (A# 245-547-880),

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-07615 DJC SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

Petitioner is a citizen and national of Venezuela who is presently in the custody of Immigration and Customs Enforcement ("ICE"). In Petitioner's first immigration habeas action, Cerezo v. Warden, No. 1:26-cv-03008 DJC SCR, ECF No. 11 (E.D. Cal. Apr. 24, 2026) ("Cerezo I"), District Judge Calabretta granted the petition and ordered Respondent to provide Petitioner with a constitutionally adequate bond hearing before an immigration judge ("IJ"). Judge Calabretta determined a post-deprivation remedy was appropriate because ICE detained Petitioner

"as a result of his contact with local law enforcement" related to a state battery charge. Id. at 1-2.

In his second immigration habeas action, Cerezo v. Warden, California City Det., No. 1:26-CV-04592-DJC-EFB (E.D. Cal.) ("Cerezo II"), Petitioner sought judicial review of the IJ's decision in that court-ordered hearing, which occurred on May 1, 2026. Judge Calabretta found the IJ applied the correct burden of proof, properly considered Petitioner's pending battery charge, and denied the petition. Cerezo II, 2026 WL 2267929, *2. As relevant to this action, Judge Calabretta acknowledged that the State of Florida dismissed Petitioner's pending battery charge on June 1, 2026, after the IJ's decision, and informed Petitioner that he may "request new bond hearing through the processes outlined in 8 C.F.R. § 1003.19(e)." Id.

Petitioner initiated this third immigration habeas action on September 18, 2026, raising a due process challenge to his ongoing, prolonged detention. ECF No. 1. District Judge Calabretta appointed counsel, who filed a supplemental brief framing the petition as a challenge to a subsequent bond hearing that occurred on September 8, 2026. ECF No. 11. Appointed counsel acknowledged that he had yet to receive the hearing audio, transcript, and exhibits, but conveyed Petitioner's position that the IJ did not meaningfully consider the State of Florida's dismissal of Petitioner's battery charge and instead "simply carried forward the prior custody determination." Id. at 2-4.

The undersigned construed the supplemental brief as alleging the IJ's bond decision on September 8, 2026, failed to comply with the requirements of 8 C.F.R. § 1003.19(e), and directed Respondent to file a response and lodge the audio recording of the bond hearing. ECF No. 15. In response, Respondent argues the IJ abided by the requirements of § 1003.19(e). Respondent explains that the IJ in fact credited the State of Florida's dismissal of Petitioner's battery charge but found he was a flight risk on other grounds. ECF No. 16 at 1-2. Respondent also argues that because Petitioner has appealed the bond determination to the Board of Immigration Appeals ("BIA"), the Court should require him to exhaust administrative remedies. Id. at 2.

Petitioner, through counsel, filed a reply addressing the newly submitted bond hearing records. Having reviewed the audio and written bond memorandum, Petitioner agrees that the IJ "accepted dismissal of the criminal charge as materially changed circumstances, and that she

reconsidered custody, found Petitioner was not dangerous, and denied bond on flight-risk grounds." ECF No. 18 at 1. Nevertheless, Petitioner claims the IJ's flight risk analysis was error. He argues that the IJ did not account for his testimony that he had never missed an immigration hearing and erred in relying on the uncertainty of Petitioner's relief from removal. Id. at 2-4.

## II. Legal Standards

### A. Constitutional Challenges to Bond Denials

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence[,]" but rather determining whether the IJ "applied the correct legal standard." Id. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] . . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)).

"To determine whether [a noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." Martinez, 124 F.4th at 783 (citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006)). The nine factors "'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." Id.

### B. Due Process

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within

the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## III. Analysis

### A. Adequacy of the Bond Hearing

Petitioner requested the September 8, 2026, hearing pursuant to 8 C.F.R. § 1003.19(e). This provision allows an immigration detainee to "seek an additional bond hearing before an IJ whenever they experience a material change in circumstances warranting a redetermination of custody status."[1] Rodriguez Diaz, 53 F.4th at 1195 (citing 8 C.F.R. § 1003.19(e)). The hearing audio and the IJ's written bond memorandum show that the IJ properly considered the State of

[1] Petitioner incorrectly requested a hearing pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), which allows a noncitizen to dispute they are subject to mandatory detention under 8 U.S.C. § 1226(c). As a result, the IJ spent the first half of the roughly fifteen-minute hearing sorting out the true nature of his request.

Florida's dismissal of Petitioner's battery charge, determined it represented "changed circumstances sufficient to warrant a second custody hearing," and reconsidered the immigration court's previous finding that Petitioner presented a risk of danger. ECF No. 16 at 6-7 (bond memorandum); see also ECF No. 17 at 13:20 (audio). Therefore, the parties do not dispute—and the undersigned agrees—that the IJ did not err in her application of § 1003.19(e).

The question presented then is whether the IJ abused her discretion in determining that Petitioner nevertheless still presented a flight risk. For the reasons set forth below, the undersigned finds that she did not.

As an initial matter, the hearing was not an extension of the court-ordered hearing conducted on May 1, 2026, in which the government bore the burden of proof by clear and convincing evidence. Therefore, the IJ did not err in placing the burden of proof on Petitioner. ECF No. 16 at 6, n. 1; see also Rodriguez Diaz, 53 F.4th at 1210 (holding that 8 U.S.C. § 1226(a) and its implementing regulations, which place the burden of proof on the detainee at a bond hearing, were constitutionally adequate). In finding Petitioner posed a flight risk, the IJ noted in the bond memorandum that Petitioner "failed to submit evidence of a proposed sponsor, ties to the United States, or evidence of a fixed address." ECF No. 16 at 7. The undersigned finds the IJ's consideration of these factors—including Petitioner's lack of evidence in support of them—proper under Guerra.

Petitioner is correct that the IJ does not appear to have credited his testimony that he has never missed an immigration hearing (ECF No. 17 at 10:26–10:32) in either the hearing audio or written bond memorandum. "[A]ny indication that the [IJ] did not consider all of the evidence before it," such as "misstating the record and failing to mention highly probative or potentially dispositive evidence," is an abuse of discretion. Cole v. Holder, 659 F.3d 762, 771–72 (9th Cir. 2011). However, "that does not mean that the [IJ] must individually identify and discuss every piece of evidence in the record . . . . [I]f evidence is neither highly probative [n]or potentially dispositive, the [IJ] need not expressly discuss it." Hernandez v. Garland, 52 F.4th 757, 770-71 (9th Cir. 2022) (citations omitted). While Petitioner's testimony of no missed immigration hearings is relevant to the Guerra factor of his record of appearance in court, Petitioner does not

explain why it is "highly probative or potentially dispositive" in light of the other flight factors that the IJ did consider.[2] See Rivas Campos v. Chestnut, No. 1:26-CV-01330-DJC-SCR, 2026 WL 608021, at *2 (E.D. Cal. Mar. 4, 2026).

The undersigned next considers Petitioner's arguments that the IJ erred in relying on his speculative relief from removal. Indeed, "[c]entral" to the IJ's flight risk finding was "the fact that [Petitioner's] relief from removal is uncertain." ECF No. 16 at 7 (citing Matter of Andrade, 19 I. & N. Dec. 488, 491 (BIA 1988). As the IJ noted, on July 2, 2026, another IJ denied Petitioner's applications for relief and ordered him removed to Venezuela. Id. The IJ acknowledged that Petitioner appealed that ruling to the BIA on September 14, 2026, but doubted its timeliness given it was due on August 3, 2026. Id. The IJ also noted that the BIA "summarily dismissed" the appeal on September 17, 2026. Id., n.3. Petitioner petitioned for the Ninth Circuit to review his removal order on October 23, 2026, Cerezo v. Blanche, No. 26-6401 (9th Cir.), and his removal order is administratively stayed pursuant to Ninth Circuit General Order 6.4.[3]

Petitioner points the Court to numerous cases finding that an IJ's consideration of a detainee's chances of relief from removal, standing alone, is not a constitutionally adequate basis to deny bond. See Sales v. Johnson, 323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2017) (finding the IJ's consideration of the petitioner's removal order to exclusion of all Guerra factors was insufficient to establish flight risk by clear and convincing evidence); Nazari v. Mullin, No. 2:26-CV-01904-GJL, 2026 WL 2879665, at *9 (W.D. Wash. Sept. 18, 2026) ("[T]he IJ's reliance on the existence of Petitioner's removal order, without more, does not provide a legally sufficient basis for the flight-risk determination."); De La Torre Ferretiz, v. Hernandez, No. 2:26-CV-

---

[2] It is unclear when Petitioner's removal proceedings (the "hearings" he referred to at the September 8 bond hearing) began, and accordingly whether he attended any removal hearings of his own volition. A notice to appear in the Cerezo I record scheduled his first removal hearing for October 6, 2027. No. 1:26-cv-03008, ECF No. 9-2. Petitioner asserted that he filed an asylum application in 2024, though it is not clear whether he filed it in connection with contemporaneous removal hearings, or before having his first removal hearing. It is thus unclear whether Petitioner had any hearings before ICE detained him in 2026. This ambiguity further undermines the significance of his testimony about not missing any hearings.

[3] The undersigned takes judicial notice of the Ninth Circuit Docket. See Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

02235-JHC, 2026 WL 2123037, at *5 (W.D. Wash. July 23, 2026) (finding abuse of discretion where the petitioner's "apparently poor prospects of relief from removal appears to have been the prime—indeed, the singular—ground that the IJ used in determining that Petitioner was a flight risk."). The undersigned finds these cases materially distinguishable for several reasons.

First, courts have generally found such speculation insufficient where the government bears the burden of proof by clear and convincing standard—not, as here, in a generic § 1226(a) hearing where the detainee bears the burden. See De La Torre Ferretiz, 2026 WL 2123037, at *5 n.4 (speculation alone is not enough to satisfy the clear and convincing standard); Kumar v. Noem, No. 1:26-CV-01148-DJC-AC, 2026 WL 983129, *3 (E.D. Cal. Apr. 13, 2026) ("[I]t cannot be said that the limited availability of relief is evidence of flight that remotely approaches the clear and convincing standard the IJ purported to apply."); Muzahir v. Chestnut, 837 F. Supp. 3d 1154, 1159 (E.D. Cal. 2026) (same). Moreover, unlike cases where the IJ relied on speculative relief from removal to the exclusion of all other Guerra factors, here the IJ also cited Petitioner's lack of family ties and fixed address in the United States. Finally, Judge Calabretta upheld an IJ's May 2026 finding of flight risk based on the same lack of family ties, and that Petitioner did not offer evidence of materially changed circumstances as to this factor at the September 2026 hearing.[4]

For all of these reasons, the undersigned finds that the IJ did not abuse her discretion in finding Petitioner presented a flight risk. Petitioner sought the hearing to present the changed circumstances of the dismissal of his battery charges. The IJ properly considered that evidence and reversed the immigration court's prior finding that he posed a risk of danger. The undersigned is not persuaded by Petitioner's remaining arguments as to why the IJ's reliance on his speculative relief from removal was an abuse of discretion. Accordingly, the undersigned recommends Petitioner's challenge to the IJ's decision be denied.

---

[4] At the hearing on May 1, 2026, the IJ determined the government bore its clear and convincing burden as to flight risk based in part on Petitioner's lack of family ties to the United States (i.e., that his spouse and child resided in Venezuela). See Cerezo II, ECF No. 16 at 37:00-40:25. Judge Calabretta found this was appropriate evidence for the IJ's finding. Cerezo II, 2026 WL 2267929, at *2. Petitioner submitted evidence in this habeas proceeding that his partner resides in Pennsylvania, ECF No. 11 sat 33-34, but that evidence does not appear to have been before the IJ.

**B. Due Process Analysis**

In addition to requesting judicial review of the IJ's bond determination, Petitioner also asks the Court to rule on his "independent due process claim presented in his supplemental brief, including his request for a custody hearing at which the Government bears the burden of justifying continued detention by clear and convincing evidence." ECF No. 18 at 4. That procedural due process claim asserts that the September 8, 2026, bond hearing did not provide sufficient process to justify Petitioner's continued, prolonged detention.

Petitioner remains subject to 8 U.S.C. § 1226(a) by virtue of the Ninth Circuit's administrative stay of his removal. Prieto-Romero v. Clark, 534 F.3d 1053, 1059, 1062 (9th Cir. 2008) ("Because Prieto-Romero filed a petition for review and our court entered a stay, his detention is governed by § 1226(a)[.]"); see also 8 U.S.C. § 1231(a)(1)(B)(ii) ("If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen]," detention shifts to § 1231(a) on "the date of the court's final order."). The Ninth Circuit's decision in Rodriguez Diaz forecloses a categorical due process right to a successive bond hearing in which the government bears the burden of proof by clear and convincing evidence solely by virtue of ongoing § 1226(a) detention. 53 F.4th at 1209-11. However, the undersigned does not read Rodriguez Diaz or other precedent as foreclosing individualized analysis as to whether, in any particular case, such a successive bond hearing is necessary to satisfy due process. See Rodriguez Diaz, 53 F.4th at 1213 ("[W]e do not foreclose all as-applied challenges to § 1226(a)'s procedures."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (Rodriguez Diaz "held only that a noncitizen detained under section 1226(a) does not have a right to a *second* bond hearing when the only changed material condition since their first bond hearing is the duration of their detention") (emphasis in original). Nevertheless, as explained below, the Mathews analysis does not bear out that additional process is necessary at this time.

**1. Private Interest**

Petitioner retains a general liberty interest in freedom from immigration detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533

U.S. 690. Petitioner's detention, which has reached roughly nine months, also implicates a liberty interest in avoiding prolonged detention. An individual's private interest in "freedom from prolonged detention . . . is unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Zadvydas, 533 U.S. at 701 (recognizing six months as a presumptively constitutional period of detention). Petitioner's private interest is further strengthened by his ties to his partner and minor child and gainful employment as a carpenter. See ECF No. 11 at 33-34.

In Rodriguez Diaz, the Ninth Circuit warned "not to overstate the strength" of the showing under the first Mathews factor where a noncitizen, as is the case here, has received § 1226(a)'s procedural protections. Rodriguez Diaz, 53 F.4th at 1207. "[I]n evaluating Rodriguez Diaz's interests under the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time [and] the further process that was available to him[.]" Id. at 1208. Thus, Petitioner's two redetermination hearings in May and September 2026, diminish in some way his substantial private interest. Still, on balance, the undersigned finds that the first factor tilts toward Petitioner.

**2. Erroneous Deprivation**

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. Petitioner raised this prolonged detention claim before his appointed counsel had access to the bond hearing evidence. Petitioner, through appointed counsel, argued that risk of erroneous deprivation was high because Petitioner "reports a two-to-three-minute proceeding" in which the IJ overlooked that his Florida charge had been dismissed." ECF No. 11 at 9. But as explained above, after reviewing the hearing materials, the parties now agree that the IJ complied with 8 C.F.R. § 1003.19(e).

In Rodriguez Diaz, the Ninth Circuit held that "existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation" where the petitioner received a bond hearing two months into his detention and an IJ denied petitioner's subsequent request for custody redetermination based on changed circumstances pursuant to 8 C.F.R. § 1003.19(e). 53 F.4th at 1209. Petitioner here has arguably received more process in that

the government bore the burden of proof by clear and convincing evidence at this first hearing and the IJ granted his request for a second hearing pursuant to § 1003.19(e). Thus, Petitioner's receipt of two bond hearings significantly reduces the risk of erroneous deprivation.

In so finding, the undersigned by no means suggests that Rodriguez Diaz forecloses this factor from ever favoring a noncitizen in an as-applied challenge to § 1226(a) detention. Due process may compel an additional hearing where the § 1226(a) detention becomes "unreasonably prolonged, whether by virtue of government delay or some other cause." Rodriguez Diaz, 53 F.4th at 1214 (quoting Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 280 (3d Cir. 2018)). While Petitioner will face continued detention as the Ninth Circuit considers his petition for review,[5] the Ninth Circuit has rejected that such delays are necessarily "constitutionally problematic." Prieto-Romero, 534 F.3d at 1063 (noting § 1226(a) detainee's "removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in Zadvydas were"). Accordingly, the second Mathews factor favors Respondent.

**3. Government Interest**

The government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings[.]" Zadvydas, 533 U.S. at 690 (Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" However, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020). Further, "[t]he effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Accordingly, the final factor favors petitioner.

Having conducted the Mathews analysis, the undersigned concludes that the low risk of erroneous deprivation ultimately defeats Petitioner's due process claim despite his private interest

---

[5] According to the Ninth Circuit Docket, the government's answering brief is not due until January 18, 2027. Cerezo v. Blanche, No. 26-6401, ECF No. 7 (9th Cir. Sept. 30, 2026).

in freedom from detention and the government's comparatively weak interest in continuing to detain him without a successive bond hearing, There are no facts in the record from which to distinguish this case from Rodriguez Diaz, particularly given Petitioner has received not one but two custody hearings during his nine months in detention. Accordingly, the undersigned recommends that Petitioner's procedural due process challenge to his prolonged detention be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for writ of habeas corpus (ECF No. 1) be DENIED; and
2. Petitioner's motion for a Joseph hearing (ECF No. 4) be DENIED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 24, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE